Daniel R. Watkins
Nevada State Bar No. 11881
DW@wl-llp.com
Theresa M. Santos
Nevada State Bar No. 9448
tsantos@wl-llp.com
WATKINS & LETOFSKY, LLP
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Office:(702) 901-7553; Fax: (702) 974-1297
Attorneys for Plaintiff, Jay Collins

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAY COLLINS,<br><br>          Plaintiff,<br><br>vs.<br><br>WESTERN STATES CONTRACTING, INC, a Nevada corporation; AND DOES 1-50, inclusive,<br><br>          Defendants. | Case No.: 2:20-cv-00302<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(DEMAND FOR JURY TRIAL)** |

COMES NOW, Plaintiff, JAY COLLINS (herein "PLAINTIFF"), and files this civil action against Defendants, and each of them, for violations of Title VII, 42 U.S.C. 2000(e) et seq., 42 U.S.C. 1981, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., as well as violations under Nevada Revised Statutes §613.330 et seq.; and related claims under Nevada law, seeking damages, and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction and venue over this action pursuant to Title VII, 42 U.S.C. 2000(e) et seq., 42 U.S. C. 1981, The Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and 28 U.S.C. § 1331, which confer original jurisdiction on federal district courts in suits to address the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law.

2. Jurisdiction of this Court is also appropriate under any related claims under Nevada law.

3. Supplemental Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiff has exhausted his administrative remedies.

5. All conditions precedent to jurisdiction under section 42 U.S.C. §12101 et seq. have occurred or been complied with:

    a. A charge of employment discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein and / or within 300 days of PLAINTIFF instituting proceedings with a State or local agency with authority to grant or seek relief from such unlawful employment practices alleged herein;

    b. A Notice of Right to Sue in Federal Court was received from the EEOC, dated November 18, 2019. (A true and correct copy of said letter is attached and incorporated herein as Exhibit "1".)

6. This complaint is filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

7. Venue is proper in the District of Nevada because the unlawful employment practices alleged herein were committed in whole or in part in the District of Nevada pursuant to 28 U.S.C. § 1391(b).

## PARTIES

### PLAINTIFF

8. Plaintiff, JAY COLLINS (hereinafter "Plaintiff"), was a qualified/eligible "employee" of Defendant, WESTERN STATES CONTRACTING, INC., within the meaning of Title VII, 42 U.S.C. 2000(e) et seq., 42 U.S.C. 1981, the American with Disabilities Act, 42 U.S.C. §12112 et seq., Nevada Revised Statutes §§ 608.010 and 613.010 *et seq*.; and related claims under Nevada law.

## DEFENDANT

9. Plaintiff is informed and believes that Defendant, WESTERN STATES CONTRACTING, INC, (hereinafter "DEFENDANT" or "WESTERN") is a construction company qualified to do business in Nevada. Defendant employs 15 or more employees and is an "employer" within the meaning of Title VII, 42 U.S.C. 2000(e) et seq., 42 U.S.C. 1981, 42 U.S.C. 12112 et seq., and Nevada Revised Statutes §§ 608.010 and 613.010 *et seq*.; and related claims under Nevada law.

10. Plaintiff alleges that this is the proper court because the violations of Nevada law took place at or near DEFENDANT'S local offices, located at 2810 N. Nellis Blvd, Las Vegas, NV 89115.

11. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive. The Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. Plaintiff will seek leave to amend this Complaint when the true names, capacities, participation and responsibilities have been ascertained.

12. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, the defendants named in this action, as well as the fictitiously named defendants, and each of them, were agents and employees of the remaining defendants, and in doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining defendants.

## STATEMENT OF FACTS

13. PLAINTIFF is a former employee of DEFENDANT. He began working as a truck driver for DEFENDANT on or about October 1, 2018.

14. PLAINTIFF was the only black truck driver. The other drivers were either Hispanic or Caucasian.

15. Throughout his employment, PLAINTIFF was regularly instructed to perform tasks outside of his driving duties, such as shoveling and running errands.

16. Hispanic drivers were not required to perform menial tasks such as PLAINTIFF.

17. Hispanic drivers were given preference for the driving and transportation jobs.

18. PLAINTIFF complained of this disparity to his supervisors.

19. On or about March 26, 2019, PLAINTIFF suffered a work injury when an industrial size mailbox fell on him, crushing his leg.

20. PLAINTIFF was moved to a nearby lawn, where he sat and waited for over an hour for his supervisor, Jar, Last Name Unknown, to arrive and look at him.

21. After arriving and looking at PLAINTIFF, Jar encouraged PLAINTIFF to take several days off to rest and ice his leg.

22. When PLAINTIFF'S leg did not improve as expected, he sought medical attention and filed a worker's compensation claim.

23. When Jar learned of the PLAINTIFF'S worker's compensation claim, he became very angry and yelled at PLAINTIFF, saying "You didn't listen to me.  You took matters into your own hands!"

24. DEFENDANT placed PLAINTIFF on light duty status and placed him in the company office where he completed general filing tasks.

25. While PLAINTIFF was on light duty status, Jar would frequently make disparaging comments to PLAINTIFF regarding PLAINTIFF'S use of worker's compensation benefits.

26. On or about April 30, 2019, PLAINTIFF notified Jar that he would need surgery on his leg to repair the injury he incurred in his work accident.

27. On or about April 30, 2019, DEFENDANT cancelled PLAINTIFF'S health insurance.

28. On or about May 6, 2019, DEFENDANT discharged PLAINTIFF from employment.

//

//

//

**COMPLAINT**
-4-

## COUNT I

## TITLE VII - DISCRIMINATION

## (RACE, COLOR, RELIGION, AND NATIONAL ORIGIN)

**Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*)**

**Title VII - Civil Rights Act of 1991 (42 U.S.C. §1981 *et seq.*)**

**NV Rev. Stat. § 613.330 *et seq*.**

29. Plaintiff hereby incorporates paragraphs 1 through 28 of this Complaint as though fully set forth herein.

30. During the course of Plaintiff's employment with Defendant, Defendants, by and through their agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of his race, color, religion, and/or national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

31. Defendants' unlawful discrimination against Plaintiff included treating Plaintiff differently based on his race and/or color related to employment, including recruitment, hiring, assignments, discipline, promotion, and benefits.

32. Specifically, the disparate treatment included Defendants' assigning Plaintiff menial tasks that it did not assign to white or Hispanic employees and giving Hispanic drivers the preferences for the driving and transportation jobs, all to the discriminatory detriment of all employees of another race, color, religion, and/or national origin.

33. Plaintiff's race and/or color were either the sole reason or a motivating factor for Defendants' decision to harass Plaintiff and terminate his employment.

34. As a proximate result of Defendants' discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

35. Defendants, through their agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of Defendants

and their supervisors and Human Resources Department as described above thereby ratifying the unlawful conduct of its supervisors and Human Resources Department.

36. Defendants' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's federally protected rights.

37. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

## DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE

**Americans with Disabilities Act (42 U.S.C. §12101 et seq.)**

**NV Rev. Stat. §613.330** *et seq.*

38. Plaintiff hereby incorporates paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. The Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. §12112).

40. Plaintiff had a disability within the meaning of the Americans with Disabilities Act ("ADA"). A "disability" under the ADA is a physical or mental impairment or being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual. The terms disability and physical or mental impairment include (1) any physiological disorder, or condition affecting one or more of the following body systems: neurological, musculoskeletal, and others; or (2) any mental or psychological disorder such as emotional or mental illnesses, among others.

41. Plaintiff was a qualified individual, meaning an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. At all times during his employment, Plaintiff satisfied the requisite skill, experience, education and other job-related requirements of

the employment position and could perform the essential functions of the position, with or without reasonable accommodations.

42. Specifically, Plaintiff's leg injury limited Plaintiff in the major life activities of, inter alia, carrying out his job duties for his employer.

43. Due to his actual and/or perceived disability under the ADA, Plaintiff required a reasonable accommodation to assist him with fulfilling his employment obligations. Such reasonable accommodations were available and would not have constituted an undue hardship on the operation of Defendant's business.

44. Plaintiff's disability, and/or record of a disability, and/or perceived disability were a factor that made a difference in Defendants' decision to terminate him.

45. Defendant never engaged in the interactive process with Plaintiff to evaluate and determine whether or to what degree Plaintiff needed additional accommodations for his surgery and subsequent recovery.

46. The actions of Defendant were malicious, intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

47. As a direct and proximate result of Defendant's violation of Plaintiff's rights as alleged, Plaintiff's terms, conditions, and privileges of employment were adversely affected.

48. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of her choice.

49. Plaintiff requests relief as described in the Prayer for Relief below.

//
//
//
//

# COUNT III

## INTERFERENCE AND DISCRIMINATION WITH AMERICANS WITH DISABILITIES ACT

**Americans with Disabilities Act (42 U.S.C. §12101 et seq.)**

**NV Rev. Stat. §613.330** *et seq.*

50. Plaintiff hereby incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. The Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq.* prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (42 U.S.C. §12112.)

52. Plaintiff had a disability within the meaning of the Americans with Disabilities Act ("ADA"). A "disability" under the ADA is a physical or mental impairment or being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of such individual. The terms disability and physical or mental impairment include (1) any physiological disorder, or condition affecting one or more of the following body systems: neurological, musculoskeletal, and others; or (2) any mental or psychological disorder such as emotional or mental illnesses, among others.

53. Plaintiff was a qualified individual, meaning an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. At all times during her employment, Plaintiff satisfied the requisite skill, experience, education and other job-related requirements of the employment position and could perform the essential functions of the position, with or without reasonable accommodations.

54. Plaintiff was covered by the Americans with Disabilities Act. Specifically, Plaintiff's leg injury limited Plaintiff in the major life activities of, inter alia, carrying out his job duties for her employer.

55. Due to his actual disability under the ADA, Plaintiff required a reasonable accommodation to assist him with fulfilling his employment obligations. Such reasonable accommodations were available and would not have constituted an undue hardship on the operation of Defendant's business.

56. Defendant initially accommodated Plaintiff.

57. When Defendant attempted to discuss his need to be accommodated for surgery on his leg, Defendant abruptly cancelled Plaintiff's health insurance and fired him.

58. Defendants' refusal to accommodate Plaintiff and ultimate termination of his employment constituted unwelcome interference, coercion and/or intimidation.

59. Defendants' interference, coercion and/or intimidation were rooted in Plaintiff's disability.

60. Defendant's interference, coercion and/or intimidation were sufficiently severe or pervasive to alter the terms, conditions and/or privileges of employment.

61. Defendant knew or should have known of the interference, coercion and/or intimidation and failed to take prompt, remedial action.

62. Defendant, through its agents or supervisors, failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of Defendants as described above, thereby ratifying the unlawful conduct of their agents or supervisors.

63. Plaintiff's disability was either the sole reason or a substantial motivating factor for Defendant's decision to adversely affect his employment and ultimately discharge him.

64. Defendants' actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's federally protected rights.

65. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

## TORTIOUS DISCHARGE

66. Plaintiff hereby incorporates paragraphs 1 through 57 of this Complaint as though fully set forth herein.

67. Nevada's worker's compensation laws reflect a clear public policy favoring economic security for employees injured while in the course and scope of their employment. *Hansen v Harrah's* 100 Nev. 60, 675 P.2d 394 (1984).

68. A retaliatory discharge of an employee in reaction to the filing of a workmen's compensation claim is actionable in tort. *Hansen v Harrah's* 100 Nev. 60, 675 P.2d 394 (1984).

69. DEFENDANT deliberately interfered with PLAINTIFF'S statutorily protected right to seek worker's compensation benefits through both discouraging him filing a worker's compensation claim and terminating his employment after he continued to seek treatment through worker's compensation.

70. DEFENDANT'S unlawful actions were intentional, malicious, oppressive and/or fraudulent.

71. PLAINTIFF requests relief as described in the Prayer for Relief below.

//
//
//
//
//
//
//
//

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays that this Court grant the following relief:

1. Economic Loss for Back Pay and Front Pay, plus prejudgment interest;
2. Compensatory Damages in accordance with 42 U.S.C. §12117, 42 U.S.C. §1983, and other applicable statutes;
3. Reasonable attorneys' fees pursuant to 42 U.S.C. §12205 and other applicable statutes;
4. Punitive Damages;
5. Costs of suit incurred herein; and
6. Such other and further relief as the court deems just and proper.

DATED this 12th day of February, 2020.        WATKINS & LETOFSKY, LLP

*/s/ Daniel R. Watkins*

By: _____
Daniel R. Watkins
Theresa M. Santos
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Attorneys for Plaintiff, Jay Collins